| 36 | 313 |
|----|-----|
| 131 | 168 |
| 36 | 313 |
| 137 | 493 |
| 36 | 313 |
| 153 | 287 |
| 36 | 313 |
| 175 | 444 |
| 36 | 313 |
| 181 | 595 |

## WILLIAM C. GOUDY *et al.*

## *v.*

## JOHN HALL.

1. JURISDICTION. When the action of the Circuit Court is collaterally called in question, it will be referred either to its general or its statutory powers. as may be necessary to sustain its jurisdiction, without reference to such a matter of form as the address of the petition.

2. ADMINISTRATOR — *notice of application for leave to sell land — what sufficient.* Where an administrator gave notice that he would apply "at the next term of the Fulton county Circuit Court, to be holden in Lewiston, on the second Monday in March next, for an order," etc., and the notice was published in a newspaper printed in Lewiston, Fulton county, Illinois, the first publication being in October preceding the March term, when the petition was filed, and it was objected that the notice was not dated, and the State was not named: *Held,* that the notice was sufficient.

3. SAME. It is not necessary that an administrator's notice should specify a particular day of the term, on which his petition for leave to sell real estate will be presented.

4. GUARDIAN AD LITEM. The failure of a guardian *ad litem* to answer for the infant, does not take away the jurisdiction of the court over the infant.

5. REVERSAL OF DECREE — *effect of.* The mere reversal of a decree under which an administrator has sold land, does not divest third persons of the title. If a court has jurisdiction over the parties and the subject-matter, acts performed and rights acquired by third persons under its judgment or decree, and while it remains in force, must be sustained, notwithstanding a subsequent reversal.

20 — 36 ILL.

APPEAL from the Circuit Court of Fulton county, the Hon. C. L. HIGBEE, Judge, presiding.

This was an action of ejectment, commenced October 1st, 1861, by the appellants against the appellee. The plaintiffs claimed title under the heirs of one John Fridley, and the defendant, under a sale by his administrator to pay debts. The question involved was the validity of the administrator's sale. The points presented are stated in the opinion of the court.

Mr. W. C. GOUDY, *pro se.*

I. The record of the proceedings for the sale of the lands in controversy by the administrator of John Fridley, were improperly admitted, because,

*First.* The paper purporting to be a petition under the statute, was in fact a bill in chancery, which is determined by the address to the judge in chancery sitting. *Cost et al.* v. *Rose et al.*, 17 Ill. 276.

A summons in chancery was not issued, or a notice published as required by the chancery statute, and therefore the court of chancery did not acquire jurisdiction.

The address to the bill shows the proceeding to have been in chancery, as well as the decrees rendered, and therefore the court did not acquire jurisdiction under the statute of wills.

*Second.* The notice given by the administrator of his intention to present a petition was insufficient to give the court jurisdiction, because no State is named, leaving the court uncertain, and the notice is not dated, leaving the term uncertain. The persons interested could not know with certainty when or where to appear. *Gibson* v. *Roll,* 30 Ill. 172 ; *Bowles' Heirs* v. *Rouse,* 3 Gilm. 419 ; *Boyland* v. *Boyland,* 18 Ill. 552 ; *Calhoun* v. *Webster et al.*, 2 Scam. 221 ; *Hildreth* v. *Hough,* 20 Ill. 331.

The rule of law is well settled that *ex parte* proceedings like this, where title to land is divested by summary proceedings under a statute upon constructive notice, should be strictly

construed.  Blackwell on Tax Titles, 72 ; *Smith* v. *Hileman*, 1 Scam. 642.

*Third.*  Where minors are defendants, a guardian *ad litem* must be appointed and appear in order to give the court jurisdiction, and in this case the guardian did not appear for Louisa, one of the infants.  *Bloom* v. *Burdick*, 1 Hill, 130 ; *Schneider* v. *McFarland*, 2 Comst. 459 ; *Lloyd et al.* v. *Malone et al.*, 23 Ill. 47.

II.  The decree for the sale having been reversed after the sale, and before this suit was commenced (25 Ill. 146), the sale and title thereunder fell with the decree.  *Wambaugh* v. *Gates*, 4 Seld. 138.

Mr. J. S. BAILEY, for the Appellee.

1.  The notice in this case gives the Circuit Court jurisdiction over the subject-matter and persons.  *Gibson* v. *Roll*, 27 Ill. 88.

2.  This proceeding comes within the protection of the rule regarding judicial sales.  *Young* v. *Loraine*, 11 Ill. 637 ; 1 Scam. 325 ; *Iverson* v. *Lobes*, 26. Ill. 179 ; *Stow* v. *Kimball*, 28 Ill. 107 ; *Fitzgibbon* v. *Lake*, 29 Ill. 165 ; *Goudy et al.* v. *Hall*, 30 Ill. 139 ; 4 Kent's Com. 536 ; *McJilton* v. *Love*, 13 Ill. 486 ; *Creps* v. *Druden*, 1 T. L. C. ; *Grignon's Lessees* v. *Astor*, 2 Howard, 340 ; *Lands* v. *Brant*, 10 Howard, 348 ; *Peak* v. *Shasted*, 21 Ill. 137 ; *Porter* v. *Robinson*, 3 A. K. Marshall, 253.

If this is a proceeding in chancery, then the court obtained jurisdiction of the minors by the appointment of guardian *ad litem*, and the title as to them passed under the sale.  Purple's Statutes, sec. 47, 1st vol., page 144.

As to the adults, the residence of defendant and Moss, from whom he derived title, upon the land for more than seven years before suit, barred the adults.

Also, the possession and payment of taxes for more than seven years before suit, barred the adults.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This is an action of ejectment, in which the plaintiffs below, who are also the plaintiffs in error, claimed title under the heirs of one John Fridley, deceased, and the defendant claimed under a deed from his administrator. The decree, by virtue of which the administrator sold, was afterwards reversed in this court upon a writ of error brought by the heirs. The case is reported 25 Ill. 146. The case at bar depends, first, upon the character of the judicial proceedings anterior to the sale ; and, secondly, upon the effect of the reversal. The first point evidently resolves itself into a pure question of jurisdiction.

It is first urged by the counsel for the plaintiffs in error, that the petition for leave to sell was addressed by the administrator to the judge " in chancery sitting," and that therefore the question of jurisdiction is to be determined, not by the statute of wills, but by the general principles of chancery practice. The case of *Cost* v. *Rose*, 17 Ill. 266, cited in support of this position, was a proceeding in partition in regard to which the court had both a statutory and a general chancery jurisdiction, and the address of the bill was there held to indicate the intention of the party, as to which jurisdiction he sought to call into action. But the court could not take jurisdiction of an administrator's petition of this specific character, and grant the particular relief sought, except by virtue of the statute, and the petition clearly shows it was the statutory power of the court that was invoked. Besides, the action of the court, when collaterally called in question, will be referred either to its general or its statutory powers, as may be necessary to sustain its jurisdiction, and without reference to such a mere matter of form as the address of the petition. Its jurisdiction depends upon weightier considerations. In this case, however, the address was not improper, because the jurisdiction invoked is of an equitable character, and this species of business is always transacted on the chancery side of the court.

The question then is, did the court have jurisdiction under the statute ? It is urged that the notice is insufficient, because

no State is named, and because the notice is not dated. The advertisement is as follows:

### "ADMINISTRATOR'S NOTICE.

"Notice is hereby given, to all persons interested in the estate of John Fridley, deceased, that application will be made at the next term of the Fulton county Circuit Court, to be holden in Lewiston on the second Monday in March next, for an order for the sale of all or so much of the real estate of said deceased as will be sufficient to pay his debts, to wit (description of the lands); when and where all persons interested may attend and show cause, if any they have, why said property should not be sold for the purposes aforesaid.

          "ABRAHAM MURPHY, *Adm'r.*"

The words "State of Illinois," do not appear in the advertisement. It was, however, published for the requisite time in a newspaper printed in Lewiston, Fulton county; the first publication being in October preceding the term of the court when the petition was filed. No special form is given by the statute, and this notice is not to be subjected to hypercriticism. The simple question is, would any person reading it be advised of the time and place when and where the petition would be presented, and its objects? The answer cannot be doubtful. The paper was published in Lewiston, Fulton county, in the State of Illinois. Could a person reading the advertisement suppose that "the Fulton county Circuit Court to be holden in Lewiston," described in the advertisement, referred to some possible Fulton county in another State? And so of the date. Could the reader, finding this notice in a paper bearing date October 29th, 1847, have any doubt but that "the next term" of the court, to be holden "on the second Monday of March next," referred to the month of March next after the date of the paper. It would be most unjust to overturn titles acquired by innocent purchasers at public sales upon such minute criticism. We have to consider whether the object of the law has been substantially attained, and whether a reasonable person, in the exercise of his ordinary faculties, reading this notice, would be

apprised by it in what court, and at what term, the petition would be presented. Counsel do not object that no particular day in the term was named in the notice, nor do we deem that necessary, notwithstanding a possible inference to the contrary might be drawn from a casual expression in the opinion, in the case of *Gibson* v. *Roll*, 30 Ill. 179.

It is also objected that the guardian *ad litem* did not answer for one of the infant heirs. This, however, does not affect the jurisdiction of the court. In the case of *Gibson* v. *Roll*, 27 Ill. 91, it is decided, that jurisdiction of the subject-matter is acquired by filing the petition, and jurisdiction of the persons by publication of the notice. We entertain no doubt of the correctness of this decision. But in this case, after having thus acquired jurisdiction, the court did its duty by appointing a guardian *ad litem* for all the infant heirs, and the fact that this guardian failed to answer for one of them, certainly did not take away from the court the power to pronounce its decree. The infant and the guardian were both in court, and that decides the question of jurisdiction, which alone we are now considering.

This brings us to the last question in this case — the effect of a reversal of the decree. It is urged by the counsel for the plaintiffs in error, that this destroys the title acquired by the sale, although the land was bought by a third person, and has since been several times transferred. The case of *Wambaugh* v. *Gates*, 4 Seld. 138, is cited in support of this position. The point is not reasoned by the court in that case, but it seems to be taken for granted, *sub silentio*, that the title reverts on the reversal of the order of sale. Whether that may not depend upon some statutory provision of the State of New York, we are not advised. We are certainly at a loss to imagine how the decision is to be sustained upon reason or principle. That the title acquired by a third person, through a sale under a general judgment and execution, is not affected by a subsequent reversal of the judgment, is a principle of law too well settled to need the citation of authorities. Yet what difference is there, in principle, between that case and a sale by an administrator?

In the one case the sheriff acts under a general authority from the court to sell all the lands of the defendant that may be necessary to satisfy the debt. In the other, the administrator acts under a special order directing him to sell certain specified lands. But, in both cases, it is the exercise of a power, and in both cases this power rests upon precisely the same basis, to wit, the authority of the court. If the court has jurisdiction to render the judgment, or to pronounce the decree, that is, if it has jurisdiction over the parties and the subject-matter, then, upon principles of universal law, acts performed and rights acquired by third persons, under the authority of the judgment or decree, and while it remains in force, must be sustained, notwithstanding a subsequent reversal. The necessity of this rule, as founded upon important considerations of public policy, is too apparent to admit of dispute. Society should be able to rely upon the judgments and decrees of its courts, and although it knows that they are liable to be reversed, yet it has a right, so long as they stand, to presume they have been properly rendered. The contrary doctrine would be fatal to judicial sales, and to the marketable value of titles derived from them. The naked question of jurisdiction is generally of easy determination, but how rarely would the most accomplished lawyer, called upon to examine a title depending upon judicial proceedings, often long and intricate, be able to decide, with any certainty, whether or not a technical error has crept into the record. Questions similar in their general character have often been before this court, and it has inflexibly adhered to the rule we have expressed — that when the validity of acts, done under a judicial proceeding, is collaterally called in question, we have to look only to the jurisdiction, and if that is found to have existed, then it matters not how erroneous the proceedings of the court may have been, the rights of third persons, acquired while such proceedings were unreversed, and by virtue of them, must be protected. *McLagan* v. *Brown*, 11 Ill. 523; *Young* v. *Loraine*, 11 Ill. 637; *Iverson* v. *Lobes*, 26 Ill. 179; *Stow* v. *Kimball*, 28 Ill. 107; *Fitzgibbon* v. *Lake*, 29 Ill. 165;

*Goudy* v. *Hall,* 30 Ill. 139 ; *McJilton* v. *Love,* 13 Ill. 486 ; *Peak* v. *Shasted,* 21 Ill. 137 ; *Grignon's Lessees* v. *Astor,* 3 How. 340.

We have only to say, in conclusion, that there is no class of public sales better entitled to a just degree of protection than those of administrators. Purchasers are not to be discouraged by the apprehension that, through some slight defect of form they may lose both their land and their money, and their title remain beyond even the healing power of the statute of limitations, until the heirs attain their majority, and the time for bringing a writ of error has expired. A rule involving these consequences would be most injurious to infants, by leading inevitably to the sacrifice of so much of their real estate as the administrator might find it necessary to sell. No prudent man would buy, at a price approaching the value of the land, if he felt that his title was to depend upon the decision of a writ of error to be brought at some distant day. As the rule is now understood, although there are, undoubtedly, occasional instances of hardship, yet probably there is no other class of public sales of real estate, in which there is so little sacrifice, as in sales by administrators.

In confirmation of the views above expressed as to the intent of the legislature to uphold these sales, reference may be had to the 106th section of the statute of wills, which provides that if an administrator, professing to sell under an order of court, shall make such sale contrary to the provisions of this chapter, he shall incur a penalty of five hundred dollars : "*provided,* that no such offense shall be deemed to affect the validity of such sale." Although this doubtless refers to irregularities committed after the order of sale, yet the provision shows the desire of the legislature to give stability to this species of title.

*Decree affirmed.*