## William N. Osman v. Nathaniel Traphagen.

*Administrator's sales :   Two parcels at one bid.* The sale at administrator's sale of two parcels of real estate at one bid does not render such sale void. The omission to sell in parcels is a mere irregularity, which cannot be set up to destroy the title in a collateral proceeding such as an action of ejectment between the grantee of the purchaser at such sale and an heir of the deceased, and especially not where the sale has been duly confirmed and the order of confirmation has never been disturbed.

*Payment of purchase money.* The fact that the purchase money was not all paid before the deed was given does not invalidate the title of a subsequent *bona fide* purchaser of the lands.

*Deed not given within a year.* The fact that the deed on such sale was not given within a year from the granting of the license to sell cannot be urged against the title.—*Howard v. Moore, 2 Mich., 226.*

*Effect of one of two administrators selling and deeding alone.* Where an administrator and administratrix applied together for a license to sell real estate of the deceased, which was duly granted by the probate court, and the administratrix refused to proceed with the sale and objected to the sale and did not qualify by taking the oath prescribed and giving the requisite bond, but the administrator did so qualify and alone proceeded regularly to the sale, which was afterwards duly confirmed by the probate court, and the premises were subsequently conveyed by the administrator alone, such refusal of the administratrix to join in the sale, her objection to it and subsequent omission to unite in the deed, did not render the sale void nor invalidate the title of a subsequent purchaser in good faith as against an heir of the deceased.

*Confirmation of sale shields irregularities from collateral attack.* The action of the administrator alone, under the license, whether open to any legal objection or not, was, at most, but an irregularity which is shielded by the confirmation from attack in a collateral action.

*Heard April 27 and 28.   Decided May 2.*

Error to Oakland Circuit.

The statement of facts in the opinion is sufficiently full.

*A. C. Baldwin* and *C. I. Walker,* for plaintiff in error.

Irregularity in the proceedings by an administrator for the sale of the real estate of the decedent *will not* affect the title of the purchaser when there has been a *compliance with so much as* the statute makes essential to the validity of the sale, and the good faith of the purchaser is not

questioned.—*Palmer v. Oakley, 2 Doug. Mich., 433; Howard v. Moore, 2 Mich., 226; Coon v. Fry, 6 Mich., 506.*

It was not neccessary that both administrators should join in the deed. At the common law one of two or more executors could execute a release or dispose of the assets without the assent of his co-executors, and bind the estate and all persons interested therein. All of the executors are as but one person, and each represents the whole estate.—*Dyer, 23 and margin; 11 Viner's Abr., 271; Bacon's Ab., " Executors " D (1); 2 Williams on Exrs., 810 ; Jacomb v. Harwood, 2 Ves., 267; Wheeler v. Wheeler, 9 Cow., 34; Bogart v. Hertile, 4 Hill, 492–503; Weir v. Mosher, 19 Wis., 311.* It was questioned by Lord Hardwicke, on the authority of a remark of Lord Bacon's, whether one administrator had a similar power, and the doctrine of Lord Hardwicke has been repeated in some of the text books.—*Hudson v. Hudson, 1 Atkins, 460.* There was never any solid ground for the distinction, and immediately after this dictum of Lord Hardwicke, which was in 1737, it was so determined, upon full argument, in the case of *Willard v. Fenn,* cited by Sir John Strange in 1751.—*Jacomb v. Harwood, 2 Ves., 265.* And the clear and decisive weight of authority puts both executors and administrators upon a perfect equality as to the power of one to bind the estate without the assent of the others.— *Shep. Touchstone, 274–284; 1 Wend., 589; 2 Williams on Exrs., 799; 2 Kent's Com., 416, Note; 2 Cooley's Blackstone's Com., 511; Parsons v. Hooper, 3 Johns., 70; Douglass v. Satterlee, 11 Johns., 24; James v. Hackley, 16 Johns., 273; Murray v. Blatchford, 1 Wend., 583; Harold v. Harper, 8 Blkf., 170; Wintermute v. Redington, 1 Fish, 239.* Under our statutory system there is no possible ground for this distinction.

*F. A. Baker,* for defendant in error.

GRAVES, J.

This was ejectment by Traphagen to recover two separate parcels of land in Oakland county.

The case was tried without a jury, and the facts found, so far as relevant to the points raised, are as follows:

In September, 1846, Nathaniel Traphagen, the father of defendant in error, died, seized of the land, leaving Mary Traphagen, his widow, and the defendant in error, his son and only heir; that letters of administration were issued to the widow and to Abraham H. Traphagen, the father of decedent, who regularly qualified and entered upon the trust and continued in office until the estate was settled; that the land in question was appraised at four hundred dollars, and demands allowed by the judge of probate, acting as commissioner, against the estate to four hundred and seventy-seven dollars and sixty-one cents; that after deducting the authorized allowances, no personal property remained to pay the debts, and the administratrix and administrator applied, in November, 1847, for a license to sell the real estate, which was *duly* granted in July, 1847, and which directed the order of sale of the several parcels; that the administratrix refused to proceed any further in the matter of sale after the obtainment of the license, whereupon the administrator went on and gave the required bond and took the oath prescribed, advertised the premises to be sold at a specified and proper time and place, and sold the two parcels at *one bid*, subject to the widow's right of dower, to Margaret A. Miller for two hundred and twenty-five dollars; that this sale occurred on the 17th of June, 1848, the widow then residing on the premises, and by her attorney forbidding the sale; that on the 19th day of June, 1848, the judge of probate *duly* confirmed this sale, and on the 4th day of June, 1849, the administrator conveyed the premises to the pur-

chaser and received. the last of the consideration money; that the administrator and administratrix filed their accounts with the judge of probate, by whom they were allowed; that subsequently Margaret A. Miller, the purchaser, and her husband conveyed the premises, by warranty deed, to the said Abraham H. Traphagen,'who afterwards, by like conveyance, transferred them to the plaintiff in error, he being a purchaser in good faith for valuable consideration, and with no actual knowledge of the alleged defects in the proceedings, and that he was in possession, claiming title, when and before the suit was commenced.

The court found, as matter of law, that the execution of the deed was defective, because only one of the administrators signed and executed it, wherefore it was a case of defective execution of a power, which could not be remedied on the law side of the court. Judgment was accordingly given for defendant in error.

The errors specifically assigned are that the court erred in these findings of law.

The discussion at the bar took a broader range; but no question is before us that the findings do not present. The plaintiff in error contends that it was not essential that the representatives should join in the deed, and that the court of probate, having obtained and possessed jurisdiction and granted a proper license, the matters objected to were mere irregularities at the most, which could not be taken advantage of in this way.

The defendant in error insists that the sale was illegal and void, first, because the sale and conveyance were by one only of the two representatives when the license was given to two; second, because two separate and distinct parcels were sold at one bid; third, because the sum bid was not paid in full before the deed was given; fourth, because the deed was not delivered within a year from the

sale. Strictly speaking, the second, third and fourth grounds of objection here stated are not presented by the record. But if we assume that they are before us, we find no difficulty in disposing of them. Assuming that the record shows that the two parcels were actually sold together as one, we think the sale was not made void thereby. That fact went no farther by way of impairing the sale than to make it voidable at the instance of some one aggrieved, and in a direct proceeding in the probate court, or upon appeal. If, in these judicial sales, the validity of the title, even in the hands of *bona fide* purchasers, should be made to depend on facts like this, and when, too, the facts are called out in collateral proceedings, it would lead to the most alarming consequences. The announcement of such a rule would fill the state with dismay. Titles now considered good everywhere would be subjected to scrutiny and doubt and depreciation, and sales required to be made hereafter by representatives and public officers, under judicial process and orders, would be shunned as pitfalls and snares.

The regulation to sell in parcels is a wise one, but it ought not to be considered so fundamental as to make its non-observance in every case absolutely fatal to the title under all circumstances. The situation of landed property is infinitely varied. In many instances blocks and other bodies of land are subdivided into contiguous lots or parcels by arbitrary lines, and the parts are so situated in reference to each other as naturally to lead to proceedings respecting separate or distinct parcels as though they were one. The chances for error through mistake or inadvertence in such a matter are very great.

It is true that in the present case it is claimed that these lands were wholly distinct. But we are asked to lay down a general rule, one which must include all cases where the regulation mentioned is omitted.

The only safe and practicable course is to treat the omission to sell in parcels as a mere irregularity which cannot be resorted to, to invalidate the sale when attacked collaterally. This has been held on great deliberation in New York, even in cases of sales of land on execution, where the statute directed a sale in parcels, and where no proceedings by way of confirmation were provided.—*Cunningham v. Cassidy, 17 N. Y., 276 ; Wood v. Moorhouse, 1 Lansing, 405.*

If the omission to sell in parcels in such a case cannot be shown in a collateral action to destroy the title, it certainly ought not to be allowed where the sale has been duly confirmed and the order of confirmation has never been disturbed.

The statute does not require the purchase money to be paid before the deed is given. For not exceeding three-fourths of the price the administrator is allowed to give credit for not more than three years, as the judge of probate directs or approves,—§ *3057, Comp. L.;* and there is nothing in this record to indicate that the administrator did not conform his action to this provision. The presumption under all the circumstances is that he did so. But if he did not, it was one of those incidents which will not invalidate the title of a subsequent purchaser in the position of the plaintiff in error.

The omission to give the deed within a year from the order cannot be urged against the title. That question is settled by *Howard v. Moore, 2 Mich., 226,* and on satisfactory grounds. We see no occasion for re-opening it.

The points which have been considered were introduced as respectively sufficient to overturn the title derived from the administrator's sale, by their own force, and in that view they have been discussed. We could not, in the state of this record, and therefore have not regarded any of them

as facts bearing upon the honesty and fairness of the sale, or as tending to show any fraudulent practice. We deem it necessary to make this suggestion to avoid any possible misapplication of any preceding observations.

The substantial question raised by the record is whether the refusal of the administratrix to join in the sale, her objection to it and subsequent omission to unite in the deed, can be urged in the suit by the heir to invalidate the title of the plaintiff in error. If the non-joinder and opposition of the administratrix rendered the sale by her co-representative void in the sense of being a nullity, if her non-participation and objection made the sale in contemplation of law as though it had never been, then no title could possibly be derived from it, and no act of confirmation by the probate court could give it vitality. On the other hand, if the sale, being made without her co-operation and against her will, was thereby rendered merely irregular or erroneous and voidable, then the due confirmation of it by the probate court invested it with such force and efficacy as a sale, that it would stand so long as the order of confirmation should be unimpaired, and could not be invalidated on the same ground in any collateral action. The sale is bound up with the order of confirmation, and can be overthrown for no reason not sufficient to overthrow the judgment of the probate court.

Was the sale void? The court finds that the license was duly granted. The court of probate had jurisdiction. There was no personal property to pay debts. The estate was indebted and this land belonged to it. The creditors had a positive right to have this land converted into cash to pay, or go as far as it might in paying their debts. The representatives were under a strict duty to seek a license from the court for the sale of the land, in order to use the proceeds in paying the debts, and in obtaining such

license, to proceed with all reasonable diligence to a sale of the land and application of the proceeds. There was no other way for subjecting the land to the payment of creditors of the estate. The license to the representatives not only gave power but it imposed a duty. They were required to act for the benefit of others. The administrator proceeded to discharge his duty. The administratrix refused. The former gave the bond and took the oath required in such cases. The latter did neither, and therefore, while remaining in the representative office, she was never specially qualified to perform the special function. She continued as much disqualified to act in the sale of the real estate as though she had never been administratrix. In applying for the license nothing more was needed than the general qualification of administrator.

If after the license was obtained the administratrix had been removed for obstructing the sale or the settlement of the estate, it will be admitted that the subsequent proceedings would not have been invalidated in consequence of her not uniting in them. The fact that she objected to the sale would be of no moment if she had united in the proceedings and deed. The material thing is that she did not unite in the proceedings. Having failed to qualify herself for the special function and not possessing the character required by law for the specific duty, her co-representative clothed himself with the qualities essential to the special trust, and thus held alone an interior office in the administrator's office. He went on alone and made the sale. No other person was authorized, because no one else had become competent. The probate court, in which the administrator had qualified himself for the special duty, confirmed the sale and ordered a conveyance.

The probate court could not compel the administratrix to qualify herself for the sale of the land. It could, per-

haps, remove her for failing to qualify. Did her remaining in the office of administratrix render void the special act of the administrator, who had specially met the conditions required by law as preparatory to the doing of that act? For that proceeding he was as clearly a sole agent as though the administratrix had been dead. The sale was his sale, and he was the only person in the world competent to make it. It was a judicial sale and was confirmed. In order to confirm it the judge of probate was required to find that it was legally and fairly made.—§ *3059, Comp. L.* The court had jurisdiction to inquire whether the sale made by the administrator alone was legal. It was the duty of the court to make that inquiry. The sale was not rendered a nullity by means of the non-joinder in the proceedings of a disqualified person. If the action of the administrator alone, under the license, was open to any legal objection (a point we do not determine), it was at most an irregularity, which, if not cured by the judgment of confirmation, is shielded by it against attack in a collateral action.—*Goudy v. Hall, 36 Ill., 313 and cases; McPherson v. Cunliff, 11 Sergt. & R., 422; Diese v. Fackler, 58 Penn. St., 109; Yaple v. Titus, 41 Penn. St., 195; American Ins. Co. v. Fisk, 1 Paige, 90; Grignon's Lessee v. Astor, 2 How. R., 340; McGoon v. Scales, 9 Wall., 23.*

The giving of the deed stands upon the same ground. The order of confirmation required it to be given. The statute does not in terms declare who shall execute the deed. The sale, when confirmed, entitles the purchaser to a conveyance as evidence of his title; and the inference from the various provisions of the statute, relating to the subject, as well as from the nature of the thing itself, is that the administrator empowered to sell and making the sale is a proper party to execute the conveyance. It is not necessary to inquire whether, in any supposable case, it might not be

executed by some one else. The non-joinder of the administratrix in the conveyance did not render the deed void. She had nothing to do with the sale and was not competent to have. The deed here was executed by the only party who had fulfilled those conditions which were prerequisite to the exercise and execution of the power. He alone made the sale. That sale was confirmed as a sale made by him alone, and the deed followed it, and is supported by it, and it is no more exposed to attack in a collateral action, for defects short of such as would make it void, than the judgment of confirmation.

The judgment must be reversed, with costs, and a new trial ordered.

CAMPBELL, CH. J., and COOLEY, J., concurred.

CHRISTIANCY, J., did not sit in this case.